IN THE UNITED STATES FEDERAL DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CR. NO. 1:06cr11-MEF |
| | * | |
| TED DEWAYNE STEPHENS | * | |
| Defendants. | * | |

## MOTION TO SUPPRESS

COMES, James R. Cooper, Jr. who on behalf of his client Ted Stephens, does move this Court to Suppress certain items and statements and states in support thereof as follows:

1.     Mr. Stephens was indicated for being an ex-felon in possession of a firearm.

2.     The Indictment alleges as follows:

a. that on or about May 9, 2005, Mr. Stephens did knowingly possession a firearm after first being convicted of a felony.

b. that on or about August 6, 2005, Mr. Stephens did knowingly possession a firearm after first being convicted of a felony.

c. that on November 23, 2005, Mr. Stephens did knowingly possession a firearm after first being convicted of a felony.

3.     The underlying circumstances in the May 9, 2005, incident are as follows:

On May 9, 2005, at approximately 8:31 P.M. the Dothan Police Department responded to a call from an unknown or unidentified person concerning alleged drug activity at a certain location. Neither the caller nor his or her track record  for providing good, useful and valid information were ever identified or made know. From the incident report, the call just came in from some unknown person about unspecific activities labeled  illegal drug activities.

Based upon that single phone call, Dothan Police officers drove to that location and saw an unidentified black male sitting in a car minding his own business doing nothing. That person was Mr. Stephens. They approached and asked him to get out of the car, after first claiming that he put something on his left side. They

had no reason to stop him. They had no reason to approach him. They had no reason to have him get out of a car. But they did. They physically grabbed him and then searched the car where they found a gun. They failed at that time to read him his Miranda Rights. They questioned him and he stated that the gun was his.

4.     The underlying circumstances in the August 6, 2005, incident are as follows:

On August 6, 2005, at approximately 12:05 A.M. Officers of the Dothan Police Department were sitting in a police vehicle looking at a pool hall. They saw a red truck parked in front of that pool hall. They saw a white male driver get out and go into the pool hall. They observed a white male passenger still in the truck.

The police officers then left. They drove around the block and then came back and saw a truck which appeared to be the same one headed in the opposite direction from that they were traveling. They followed the truck a short distance when they put on their blue lights and stopped the truck.

The supplemental report entered two days later by a different officer, indicates that the officers stopped the truck because it did not have a functioning tag light. ( If you believe that then you may also believe in the tooth fairy.) It is not apparent that any traffic citation was ever issued.

The driver sat in the truck. Mr. Stephens got out and ran off. He was chased down by the officers, Tasered, stunned and fell to the ground. An object was found near him, which was a handgun. He was questioned without a Miranda Rights warning.

5.     The underlying circumstances in the November 23, 2005, incident are as follows:

On November 23, 2005, at approximately 12:50 A.M., officers of the Dothan Police Department followed a car. While behind the car, the officers report that it ran a stop light. The officers then followed that car, turning on their lights and eventually it stopped at approximately 12:54 A.M..  At that time, a man got out and ran off. The officers lost sight of the man at that time.  After going through the contents of the car, the officers determined to whom it belonged.

At approximately 1:14 A.M. the officers found a man lying on the ground in the woods. That person was later identified as Mr. Stephens.  Near where he was found hiding, the Officers found a coat. In it was a gun. Mr. Stephens later gave a statement about this weapon.

6.     The Fourth Amendment to the United States Constitution protects the right of persons to be free from unreasonable searches and seizures. U.S. Const. amend. IV. A seizure takes place "whenever a police officer accosts an individual and restrains his freedom to walk away." United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975). Traffic stops qualify as seizures under the Fourth Amendment.

Delaware v. Prouse, 440 U.S. 648, 653 (1979).

On the three dates identified above, Mr. Stephens was seized by police officers and certain items taken from or near him. In addition to being physically seized, statements were taken from him as a direct result of his seizure and subsequent arrests.

7.    The Supreme Court has identified at least three separate categories of police

citizen encounters in determining which level of Fourth Amendment scrutiny to apply: (1) brief, consensual and non-coercive interactions that do not require Fourth Amendment scrutiny, Florida v. Bostick, 501 U.S. 429 (1991); (2) legitimate and restrained investigative stops short of arrests to which limited Fourth Amendment scrutiny is applied, Terry v. Ohio, 392 U.S. 1 (1968); and (3) technical arrests, full-blown searches or custodial detentions that lead to a stricter form of Fourth Amendment scrutiny, Brown v. Illinois, 422 U.S. 590 (1975).

8.    At issue in this case is the second type of encounter, commonly referred to as a Terry stop. Terry requires that an officer have an objective, reasonable suspicion of criminal activity. Pursuant to this standard, a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place," United States v. Purcell, 236 F. 3d 1277 ( 11th Cir. 2001 ) (citing Terry, 392 U.S. at 20)..., and may not last "any longer than necessary to process the traffic violation" unless there is articulable suspicion of other illegal activity. Id. )
.

9.    Under the exclusionary rule, evidence obtained in an encounter that is in violation

of the Fourth Amendment, including the direct products of police misconduct and evidence derived from the illegal conduct, or "fruit of the poisonous tree," cannot be used in a criminal trial against the victim of the illegal search an d seizure. United States v. Terzado-Madruga, **897 F.2d 1099**, 1112 (11th Cir. 1990). See also Weeks v. United States, 232 U.S. 383, 391-93 (1914).

10.    In the case of United States v. Perkins, 348 F.3d 965 (11th Cir. 10/22/2003)] , the 11th Circuit upheld the District Court's suppression of evidence based upon a traffic stop. The Court ultimately held as follows:

"[33] As Colston testified, following issuance of the traffic citation to Perkins, he merely had a "hunch" based upon the totality of the circumstances that Perkins was lying to him about his destination. This "hunch" led him to initiate a new investigation of other criminal activity after the purpose of the traffic stop had ended. Thus, the continued detention of Perkins and Scott beyond the issuance of the traffic citation, during which Colston repeatedly asked if there were drugs in the car and called in a drug dog, was unlawful. Since Perkins' consent to the search of the car was the product of an unlawful detention, "the consent was tainted by the illegality and was ineffective to justify the search." Florida v. Royer,

460 U.S. 491, 507-08 (1983) (plurality opinion). Therefore, any statements made and evidence seized during the unlawful detention are to be excluded. Finally, we emphasize that "the fact that [Colston's] hunch ultimately turned out to be correct–i.e. that [Perkins and Scott] were illegally transporting [drugs] is irrelevant for purposes of the Fourth Amendment. To hold otherwise would open the door to patently illegal searches by government officials, who would attempt to justify the legality of their conduct after-the-fact." Pruitt, 174 F.3d at 1221 n.4.

[34] IV. CONCLUSION

[35] Based on the foregoing, we conclude that Colston's prolonged detention of

Perkins and Scott beyond the issuance of the traffic citation was unconstitutional. Colston's inference from the totality of the circumstances that he observed was merely an unparticularized hunch that failed to rise to the level of reasonable suspicion of other criminal activity. We thus AFFIRM the district court's grant of Perkins and Scott's motions to suppress. "

11.     That fairly summarizes what the officers did in the first arrest May 9, 2005. They got a *tip* from some unidentified, unknown person of unknown origin, of unknown reliability and used that to stop Mr. Stephens. They saw nothing wrong when they approached him but using that *tip* leveraged their encounter to the point they seized Mr. Stephens person and found a gun near him. Good hunches do not meet constitutional muster.

12.     The same is true for the August 6, 2005, seizure. The officers saw a red truck parked outside a pool hall with two white men. They left, saw a similar truck driving past them and stopped it. Mr. Stephens ran off, was seized and a hand gun found near him. He was subsequently questioned and made several statements.

        The arresting officers had no probable cause under any circumstances to stop the truck. The initial report said that they even left the scene and the truck had left too. Two days later, there is a supplement report saying the reason this 2nd truck was stopped was because its *tag light was out.* Again we have officers with a hunch which is not enough.

13.     Finally on November 23, 2005, the officers claim a vehicle being driven by someone, ran a stop sign early, early in the morning. The driver leaves the vehicle and after some time, find Mr. Stephens. There was no running of the stop sign. That is the excuse used to stop the car. Mr. Stephens is found near the scene with a gun near him, but not in his possession. The officers did not have probable cause to stop the vehicle nor seize Mr. Stephens. He can lie in the woods all he wants, that is not yet a crime.

        For the reasons cited Mr. Stephens requests the following relief:

1. That a hearing be conducted in that matter wherein the police officers involved be made to testify before this court and at the conclusion of which all items seized from or near him including the three guns in question and all statements he made during and in all three instances, be suppressed.

2. All other appropriate relief.

RESPECTFULLY SUBMITTED,

_____
s/James R. Cooper, Jr. (COO021)
COOPER & COOPER
Attorney for Defendant
312 Scott Street
Montgomery, AL 36104
(334) 262-4887

## CERTIFICATE OF SERVICE

I hereby certify that on this the 28th day of March, 2005, I have served a copy of the foregoing Motion to Suppress upon Mr. Kent Brunson, Asst. U.S. Attorney, P.O. Box 197, Montgomery, Alabama 36101 and by electronic case filing, by placing a copy of same in the United States Mail properly addressed and postage prepaid.

_____
s/James R. Cooper, Jr.

cc:
Ted Stephens
Montgomery City Jail
P. O. Drawer 159
Montgomery, AL 36104